IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL FIRE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-1557-M |
| | § | |
| ENTERTAINMENT SPECIALTY | § | |
| INSURANCE SERVICES, INC., | § | |
| CONSTITUTION INSURANCE | § | |
| COMPANY, and ROBERT REBER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff National Fire Insurance Company ("National") seeks a declaratory judgment that it has no duty to defend Entertainment Specialty Insurance Services, Inc. ("ESIS") in a suit brought against it by Constitution Insurance Company ("Constitution") in state court,[1] and that it has no duty to indemnify ESIS for any liability found in that suit. Before the Court are cross-motions for summary judgment filed by National and Defendants. For the reasons set forth below, the Court **DENIES** Defendants' Motion for Summary Judgment. Because National has not moved for summary judgment on what the Court concludes is the dispositive issue—the care, custody or control exclusion—the Court cannot enter summary judgment in its favor. However, the Court intends to do so, *sua sponte*, subject only to review of any new arguments Defendants submit to the Court in a brief of no longer than **five pages**, due on **March 22, 2007**. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770–71 (5th Cir. 2000) ("it is well-settled that a district court may grant summary judgment *sua sponte*, 'so long as the losing party has ten days notice to come

---

[1] The Court's shall refer to ESIS and Constitution, collectively, as "Defendants."

forward with all of its evidence' in opposition to summary judgment") (quoting *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995)); FED. R. CIV. P. 56(c).

In light of the fact that Defendant Robert Reber is not a defendant in the live underlying petition and does not seek a defense from National, National's Motion for Summary Judgment as to Reber is **DENIED AS MOOT**. If National no longer wishes to pursue its claims against Reber as a result, it is **ORDERED** to move the Court to dismiss its claims against Reber, by **March 22, 2007**.

## BACKGROUND

The facts relevant here are largely those alleged by Constitution in its state court suit against ESIS. ESIS, a Texas insurance company, entered into an agreement to underwrite insurance coverages on behalf of Constitution, a New York insurance company. As part of the agreement, ESIS received premium funds from Constitution's policyholders and was obligated to maintain those funds on Constitution's behalf. In October 2002, Constitution sought to audit ESIS's handling and maintenance of the funds. Constitution allegedly discovered that ESIS's employees failed to maintain the funds appropriately and benefitted from fraudulent transfers of the funds, which caused Constitution to lose in excess of six million dollars. The resulting dispute developed into the underlying state court litigation. Although the Fifth Amended Petition alleges the facts as described above, the Sixth Amended Petition alleges only that "employees of ESIS absconded with Constitution's business assets causing Constitution the loss of use of such property" and that ESIS's negligence proximately caused the loss. The Sixth Amended Petition does not clarify the nature of the business assets or the nature of the actions of ESIS's employees.

National is the general liability insurer of ESIS. It seeks a declaratory judgment that it has no duty to defend ESIS in Constitution's suit against ESIS, and that it has no duty to indemnify ESIS for any liability it may be found to have. National alleges that Constitution replaced the phrase "premium funds" with "business assets" in the Sixth Amended Petition to trigger insurance coverage of ESIS by National. This aspect of the dispute is relevant only to an understanding of the posture of this case and not to its resolution.

## STANDARD OF REVIEW

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). This duty-to-defend case presents no genuine issue of material fact and is ripe for resolution as a matter of law. *See E. & R. Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F. Supp. 2d 746, 749 (N.D. Tex. Apr. 18, 2001) (Lynn, J.).

## ANALYSIS

In Texas, an insurer's duty to defend is determined under the eight-corners, or complaint-allegation, rule, which derives its name from the fact that "only two documents are ordinarily relevant to the determination . . . : the [insurance] policy and the pleadings of the third-party complaint." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see Burlington*, 148 F. Supp. 2d at 749–50. A complaint triggers the duty to defend if it alleges facts within the scope of coverage of the insurance policy. *Burlington*, 148 F. Supp. 2d at 749. Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the

claims levied against it potentially fall within the insurance policy's scope of coverage. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004); *Burlington*, 148 F. Supp. 2d at 749. If the insured carries its burden, the insurer may argue the applicability of an exclusion to coverage under the policy. *Burlington*, 148 F. Supp. 2d at 749.

## A. Insurance Coverage

As a general matter, the eight-corners rule forbids reliance on evidence extrinsic to the eight corners of the complaint and insurance policy. *GuideOne*, 197 S.W.3d at 308. This prohibition likewise precludes reliance on any but the latest amended complaint. *Northfield*, 363 F.3d at 528. Accordingly, to carry its initial burden of establishing that Constitution's state court complaint alleges facts within the coverage of the insurance policy, ESIS argues that the Sixth Amended Petition's allegation of damage to "business assets" falls within the insurance policy's coverage of "property damage."[2] National responds that Constitution's use of the phrase "business assets" in lieu of "premium funds" in the latest petition is a veiled attempt to establish coverage where none exists, as damage to, or loss of, premium funds would not be covered by the policy. It argues that the Court may consider evidence extrinsic to the latest amended petition on the basis of an exception to the eight-corners rule. The Court declines to assess the vitality of the alleged exception. *See generally Northfield*, 363 F.3d at 531; *GuideOne*, 197 S.W.3d at 310; *Fair Operating, Inc. v. Mid-Continent Cas. Co.*, No. 05-50917, 2006 WL 2242547, at *3 (5th Cir. Aug. 1, 2006) (unpublished opinion). Rather, the Court assumes, without deciding, that Defendants can meet the initial burden of establishing insurance coverage—for which they rely

---

[2]The insurance policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured."

exclusively on the policy's coverage of "property damage"—and focuses instead on the applicability of an exclusion asserted by National: that coverage is excluded where the property damaged was in the "care, custody or control" of the insured—here, ESIS.

*B. Waiver*

Defendants first contend that National waived its right to assert the "care, custody or control" exclusion by failing to raise it in its denial of coverage letter, dated August 28, 2003. In Texas, "when one specific ground of forfeiture is urged against a policy of insurance, and the validity thereof denied on that ground alone, all other grounds are waived." *Lancon v. Employers Nat'l Life Ins. Co.*, 424 S.W.2d 321, 322–23 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). For two reasons, the Court finds that National's failure to raise the exclusion in the August 28, 2003 letter did not effect a waiver of the exclusion.

First, "[b]efore the insurance company will be held to have waived a ground of forfeiture, or to be estopped from asserting such a ground, by reason of the fact that it has denied liability on another ground, the insured must show that the company knew the facts which would entitle it to insist on forfeiture at the time the company denied liability." *Lancon*, 424 S.W.2d at 323. This requirement exists because "[w]aiver is the *intentional* relinquishment of a known right or intentional conduct inconsistent with claiming it." *T.J. Serv. Co. v. U.S. Fid. & Guar. Co.*, 472 S.W.2d 168, 173 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.) (emphasis added). Defendants have not attempted, nor would they be able, to show that National knew the facts prerequisite to assertion of the "care, custody or control" exclusion when the August 28, 2003 letter was sent. Before the Sixth Amended Petition, Constitution had asserted claims based on negligence in the handling of "premium funds" held by ESIS on Constitution's behalf. The Sixth

Amended Petition, filed on May 19, 2006, replaced the phrase "premium funds" with the phrase "business assets."  In their Motion for Summary Judgment in this suit, Defendants equate the damage allegedly done to Constitution's business assets with property damage, which in turn prompted National to assert the "care, custody or control" exclusion.  National contends, and Defendants do not contest, that before the Sixth Amended Petition was filed, Constitution did not state claims against ESIS for property damage, because economic loss—i.e., the loss of premium funds—is not "property damage" within the meaning of the insurance policy.[3]  *See Md. Cas. Co. v. Tex. Commerce Bancshares, Inc.*, 878 F. Supp. 939, 943 (N.D. Tex. 1995) (Kendall, J.); *Snug Harbor, Ltd. v. Zurch Ins.*, 968 F.2d 538, 542 (5th Cir. 1992).  The Court agrees.  The "care, custody or control" exclusion, which only applies to property damage, would accordingly be inapplicable to claims of loss of premium funds.  Therefore, the care, custody or control exclusion could not have been waived by the August 28, 2003 denial of coverage letter.  *See T.J. Serv. Co.*, 472 S.W.2d at 173.  Indeed, a similar result obtained in *Lancon*, the case upon which Defendants principally rely.  There, the court found that "[t]he evidence does not show that the insurance company was in possession of facts at the time it denied liability from which it could reasonably conclude" that the newly discovered defense applied.  *Lancon*, 424 S.W.2d at 323. To the extent that Defendants argue that National waived the exclusion by failing to raise it in its Supplemental Motion for Summary Judgment—which was filed after the Sixth Amended Petition—the Court is unpersuaded, as a motion for summary judgment is not a denial of coverage on limited grounds which can have the effect of waiving other grounds.

---

[3] The policy at issue defines "property damage" as physical injury to, or loss of use of, "tangible property."

The Court finds Defendants' claim of waiver to be without merit for the additional reason that National's August 28, 2003 letter did not purport to rely only on a particular defense against policy coverage. Rather, National's letter included several paragraphs reserving other potential defenses.[4] Such disclamatory language effectively reserved other defenses to coverage. *See Esco Transp. Co. v. Gen. Ins. Co. of Am.*, 75 F. App'x 936, 940 (5th Cir. 2003) (unpublished opinion) (distinguishing *Lancon* based on disclamatory language contained in the letter denying coverage); *T.J. Serv. Co.*, 472 S.W.2d at 173 (finding no waiver where insurance company "reserved all of its defenses, expressing stating that it did not intend to waive any other defense that it had").

For both of these reasons, the Court finds that National did not waive its right to assert the "care, custody or control" exclusion to policy coverage.

## *C. Care, Custody or Control Exclusion*

National argues that it has no duty to defend ESIS because the business assets at issue in the underlying suit were in the "care, custody or control" of ESIS.[5] National "bears the burden of showing that the plain language of [the] policy exclusion . . . allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield*, 363 F.3d at 528 (emphasis in original). There is no dispute that the insurance policy purchased by ESIS does not cover "property damage" to "[p]ersonal property in the care, custody or control of the insured."

---

[4]Among other things, the letter states:
> National Fire Insurance Company of Hartford fully reserves and retains all rights which it has under the terms of the policy and under the law. The above evaluation of coverage is not intended to be exhaustive, and there may be other terms and conditions of the National Fire policy which, although not specifically mentioned in this letter, may apply to this claim.

[5]Section B(1)(k)(4) of the insurance policy disclaims coverage for property damage to "[p]ersonal property in the care, custody or control of the insured."

The only question is whether Constitution's business assets were in fact in the care, custody or control of ESIS.[6]  As a general matter, the care, custody or control exclusion applies "to the particular object of the insured's work, usually personalty, and to other property which [the insured] totally and physically manipulates."  *Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 289–90 (Tex. 1969); *see SnyderGeneral Corp. v. Century Indem. Co.*, 113 F.3d 536, 539 (5th Cir. 1997).  "[W]here the property damaged is merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such 'care, custody or control' of the insured to be excluded under the policy.  Where, however, the damaged property is under the immediate supervision of the insured, and is a necessary element of the work involved, it is considered as under the 'care, custody or control' of the insured, and the insurer is not liable."  *Goswick*, 440 S.W.2d at 290.  The same standard has been alternatively stated to require that the insured have the "right to exercise dominion or control" over the subject property.  *Md. Cas. Co. v. Golden Jersey Creamery*, 389 S.W.2d 701, 703–04 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.).  In *Goswick*, for example, the insured was hired to replace the pump of a well.  *Goswick*, 440 S.W.2d at 290.  The work required actual control of the rods and tubing of the well, but not the wall of the well or the mineral formations, which were only incidentally implicated.  *Id.*  Accordingly, the court found that the care, custody or control exclusion applied to the rods and tubing but not to the wall of the well or the mineral formations.  *Id.*

The facts, as set forth by Constitution in the Sixth Amended Petition, leave no doubt that the business assets at issue were in the care, custody or control of ESIS at all relevant times.  An agreement between ESIS and Constitution required ESIS to "maintain" the business assets that

---

[6] Defendants do not contest National's allegation that the business assets were "personal property" within the meaning of the exclusion.

ESIS received on behalf of, and in trust for, Constitution, and prohibited ESIS from "using, taking, converting or losing" the business assets.  Specifically, the Sixth Amended Petition alleges that ESIS had the following duties with respect to the business assets:

> (a) to employ individuals with sufficient education, training, and experience, to handle the business assets ESIS received in trust for the benefit of Constitution; (b) to install and maintain appropriate procedures and systems to insure that ESIS properly handled the business assets ESIS received on Constitution's behalf; (c) to install and maintain appropriate procedures and systems to insure that ESIS properly maintained business assets received on behalf of Constitution and that there was no loss of Constitution's business assets; (d) to install and maintain appropriate accounting procedures and systems to insure that ESIS did not commingle Constitution's business assets with ESIS's own separate assets; (e) to install and maintain appropriate audit and accounting procedures to detect employee negligence in the handling of business assets ESIS received on behalf of Constitution; (f) to adequately supervise and monitor the actions of ESIS's employees in their handling of business assets received by ESIS on behalf of Constitution; (g) to provide ESIS's employees with appropriate education and training in connection with the handling of business assets received by ESIS on behalf of Constitution; and (h) to discharge ESIS employees who lacked sufficient education, training, and experience to handle the business assets ESIS received in trust for the benefit of Constitution.

Although the Sixth Amended Petition is vague as to the nature of Constitution's business assets, it alleges unambiguously that ESIS was in charge of them given the extensive duties imposed. Indeed, the business assets were the "particular object of [ESIS's] work," as well as subject to ESIS's total, physical control.  *Goswick*, 440 S.W.2d at 289.  Defendants contend that the exclusion does not apply because ESIS's control over the business assets was limited to maintenance as an agent of Constitution and because ESIS was prohibited from "using, taking, converting or losing such property."  This argument fails to appreciate the scope of ESIS's maintenance duties as discussed above.  In *Security Mutual Casualty Company v. Johnson*, a case upon which Defendants rely, the insured was driving a car owned by a friend's employer.  584 S.W.2d 703, 704 (Tex. 1979).  The Supreme Court of Texas held that the care, custody or control

exclusion precluded any duty of the insurer to defend the insured in a suit for damage caused to the car. *Id.* at 705. ESIS was plainly in a position of greater control with respect to the business assets than the insured in *Johnson*, so the same result must obtain here, *a fortiori*. Further, it is of no moment that ESIS held the business assets for Constitution's ultimate benefit, or that ESIS was prohibited from "using, taking, converting or losing such property." The care, custody or control exclusion does not require the insured to be entitled to the benefits of ownership of the subject property. *See, e.g.*, *Goswick*, 440 S.W.2d at 290. Accordingly, an analysis of the Sixth Amended Petition and the insurance policy at issue causes the Court to conclude that Constitution's business assets were in the care, custody or control of ESIS. The Court, therefore, **DENIES** Defendants' Motion for Summary Judgment, finding that National has no duty to defend ESIS in the underlying case prosecuted by Constitution.

*D. Duty to Indemnify*

The duty to indemnify is distinct from the duty to defend, and is determined based upon "the facts actually established in the underlying suit." *GuideOne*, 197 S.W.3d at 310. Therefore, resolution of the duty to indemnify must sometimes await resolution of the underlying suit. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). However, "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Id.* (emphasis in original). As the Fifth Circuit has stated, because "the duty to defend is broader than the duty to indemnify" under Texas law, "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368–69

(5th Cir. 1998). There is no duty to defend in this case because the alleged property damage occurred to personal property within the care, custody or control of the insured. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment, finding that National has no duty to indemnify ESIS.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Summary Judgment. Additionally, the Court intends to grant summary judgment in National's favor, *sua sponte*, subject to the additional briefing detailed above.

**SO ORDERED**.

March 8, 2007.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**